1  Alexander D. Terepka (CA Bar No. 288243)
2  alex@wtlaw.com
   Leo O'Toole (*pro hac vice* pending)
3  lotoole@wtlaw.com
4  **WATSTEIN TEREPKA LLP**
   515 South Flower Street, 19th Floor
5  Los Angeles, CA 90071
   Telephone: (404) 782-9821
6

7  *Attorneys for Defendant*
   *Marriott International, Inc.*
8

9            **UNITED STATES DISTRICT COURT**

10          **CENTRAL DISTRICT OF CALIFORNIA**

11

12  ANNE HEITING, an individual,           Case No. 2:23−cv−10822 JLS (MAAx)

13              Plaintiff,                  **DEFENDANT MARRIOTT**
                                            **INTERNATIONAL, INC.'S**
14       v.                                 **MOTION TO DISMISS;**
                                            **MEMORANDUM OF POINTS AND**
15                                          **AUTHORITIES IN SUPPORT**
    MARRIOTT INTERNATIONAL,
16  INC., a Maryland Corporation; and
    DOES 1 through 25, inclusive,           Date:    April 26, 2024[1]
17                                          Time:    10:30 a.m.
                Defendant.                  Ctrm:    8A
18

19

20

21                                          Removed to this Court: Dec. 27, 2023

22                                          Hon. Judge Josephine L. Staton

23

24

25

   _____
26  [1] Defendant intended to notice this motion for hearing on April 19, 2024, but that
    date became unavailable shortly before the filing of this motion. In the event that
27  date becomes available, Defendant respectfully requests that the hearing be moved
28  to April 19, 2024.

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on April 26, 2024, at 10:30 a.m., in Courtroom 8A of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, CA, 90012, Defendant Marriott International, Inc. ("Marriott") will move (and hereby does move) the Court for an order dismissing the pleadings, under Rule 12(b) of the Federal Rules of Civil Procedure. Marriott seeks dismissal of the pleadings on two grounds. First, the Court lacks personal jurisdiction over Marriott because it did not purposefully direct allegedly wrongful conduct at the state of California. The Complaint alleges no relevant contacts with California and is based entirely on Plaintiff's unilateral access of Marriott's globally accessible website. Second, Plaintiff fails to state a claim because she fails to allege a basis for liability under California Invasion of Privacy Act (CIPA), her sole claim.

**Local Rule 7-3 Certification**: This motion is made following several conferences with opposing counsel under Local Rule 7-3. The parties originally met on January 26, 2024, after which Plaintiff's counsel indicated that she would amend the complaint. Plaintiff, however, failed to amend until after the deadline to do so under Federal Rule 15 expired, and the parties met and conferred again per Local Rule 7-3 on February 29, 2024, and Marriott explained again at length the basis for the instant motion. Plaintiff then again stated she would amend and asked Marriott to consent to an amendment even though the deadline to do so had expired. In the interest of avoiding unnecessary disputes, Marriott agreed. Plaintiff then filed an Amended Complaint on March 12, 2024. The parties again met on March 14, 2024, pursuant to Local Rule 7-3. The parties again were not able to agree on the substantive issues.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and attached Authorities and declarations filed with it, the complete file and record in this action, and such further and other matters as the Court may allow.

WATSTEIN TEREPKA LLP

DATED:  March 22, 2024          By:  */s/ Alexander D. Terepka*
                                       Alexander D. Terepka

                                    *Attorney for Defendant*
                                    *Marriott International, Inc.*

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................ 3

    A. Plaintiff Initiated a Chat on a Universally Available Website that Anyone Can Access Nationwide. ................................................................................ 3

    B. Plaintiff Has Targeted Dozens with Nearly Identical Lawsuits. ................. 4

III. LEGAL STANDARD ....................................................................................... 6

    A. Lack of Personal Jurisdiction. ................................................................... 6

    B. Failure to State a Claim. ............................................................................ 6

IV. ARGUMENT .................................................................................................... 6

    A. The Court Lacks Personal Jurisdiction. ..................................................... 6

        1. Marriott Is Not Subject to General Jurisdiction in California. ......... 7

        2. Marriott Is Not Subject to Specific Jurisdiction in California. ......... 8

            a. Marriott Did Not Purposefully Direct Activities at Plaintiff or California. ................................................................................. 9

                (i) Marriott Did Not Expressly Aim at Plaintiff or California Because Plaintiff Unilaterally Contacted Marriott. ............................................................................. 9

                (ii) Marriott Did Not Expressly Aim at or Target Plaintiff or California with a Universally Accessible Website. 13

                (iii) Marriott Did Not Expressly Aim Any Wrongful Conduct at Plaintiff or California. ............................... 16

            b. Plaintiff's Claims Do Not Arise Out of or Relate to Marriott's Forum-Related Activities. ................................... 17

            c. Specific Jurisdiction Over Marriott in California Would Not Comport with Fair Play and Substantial Justice. ................. 18

    B. Plaintiff Fails to State a Claim for Relief under the CIPA. ...................... 19

V. CONCLUSION ................................................................................................. 22

# **TABLE OF AUTHORITIES**

**Cases**

*Afifeh v. Ahmadabadi*, 2022 WL 1060638 (C.D. Cal. 2022) ……………………..7

*AMA Multimedia v. Wanat*, 970 F.3d 1201 (9th Cir. 2020)...................................15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 6

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064
  (9th Cir. 2017) .................................................................................................. 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 6

*Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. 2023).....................................passim

*Byars v. Hot Topic, Inc.*, 2023 WL 2026994 (C.D. Cal. 2023) ........................... 16

*Caceres v. Bank of Am.*, 2013 WL 7098635 (C.D. Cal. 2013) ............................. 8

*Chan v. UBS*, 2019 WL 6825747 (C.D. Cal. 2019)............................................ 11

*Clarke v. Air & Liquid Sys.*, 2020 WL 12968241 (C.D. Cal. 2020) ........................ 6

*CollegeSource v. AcademyOne*, 653 F.3d 1066 (9th Cir. 2011).............................7

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ..................................................7, 8

*Dangoor v. Peterson's*, 2019 WL 6357252 (C.D. Cal. 2019) ............................ 11

*Dillon v. Avis Budget Grp.*, 2018 WL 3475529 (C.D. Cal. 2018) .......................... 8

*Doe v. FullStory*, 2024 WL 188101 (N.D. Cal. 2024) ...................................11, 15

*Excel Plas v. Sigmax Co.*, 2007 WL 2853932 (S.D. Cal. 2007)......................6, 19

*Gutierrez v. Converse Inc.*, 2023 WL 8939221 (C.D. Cal. 2023) ......................... 21

*Hanson v. Denckla*, 357 U.S. 235 (1958) ........................................................ 10

*Heiting v. Taro Pharms.*, 2023 WL 9319049 (C.D. Cal. 2023)......................passim

*In re Vizio*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017).............................................. 21

*Kauffman v. Home Depot*, 2024 WL 221434 (S.D. Cal. 2024) .......................11, 15

*Kellytoy Worldwide v. Jay at Play Int'l Hong Kong*,
  2019 WL 8064196 (C.D. Cal. 2019) ................................................................ 18

*Kevin Barry Fine Art v. Ken Gangbar*, 486 F. Supp. 3d 1353

   (N.D. Cal. 2020) ................................................................................ 1

*Kuhmstedt v. Enttech Media*, 2022 WL 1769126 (C.D. Cal. 2022) ....................... 6

*Lescano v. Marriott*, 2017 WL 10299576 (M.D. Fla. 2017) ................................ 8

*Licea v. Caraway Home*, 655 F. Supp. 3d 954 (C.D. Cal. 2023).............. 5, 6, 11, 12

*Licea v. Cinmar*, 659 F. Supp. 3d 1096 (C.D. Cal. 2023).................................... 19

*Liggett v. Utah Higher Educ.*, 2020 WL 1972286

   (C.D. Cal. 2020) ............................................................................... 11

*Meehan v. Tsichlis*, 2021 WL 467214 (C.D. Cal. 2021)....................................... 13

*MGA Ent. v. Cabo Concepts*, 2021 WL 4733784

   (C.D. Cal. 2021) .................................................................... 7, 15, 17

*Moledina v. Marriott*, 635 F. Supp. 3d 941 (C.D. Cal. 2022)......................... *passim*

*PHD Mktg. v. Vital Pharms.*, 2020 WL 13336773 (C.D. Cal. 2020) .................... 16

*Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015)............................................... 10

*Ranza v. Nike*, 793 F.3d 1059 (9th Cir. 2015) ................................................. 8

*Rex Real Est. Exch. v. Rex Real Est. I, L.P.*, 2018 WL 8335386

   (C.D. Cal. 2018) ........................................................................ 16, 17

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797

   (9th Cir. 2004) ..................................................................... 9, 17, 18

*Solo Brands v. The P'ships & Unincorporated Ass'ns*,

   2023 WL 9420525 (C.D. Cal. 2023) ........................................... 13, 14

*Walden v. Fiore*, 571 U.S. 277, at 290 (2014) .............................................. *passim*

*Williams v. What If Holdings*, 2022 WL 17869275 (N.D. Cal. 2022).................... 19

*Yeager v. Airbus Grp.*, 2021 WL 750836 (C.D. Cal. 2021) ............................. 6, 7

*Yockey v. Salesforce*, 2023 WL 5519323 (N.D. Cal. 2023).................................. 21

**Statutes**

Cal. Pen. Code § 631 ................................................................................ 1, 16, 19, 20

**Rules**

Fed. R. Civ. P. 12 ................................................................................................. 6

# I.     INTRODUCTION

This lawsuit is entirely based on the claim that Defendant Marriott "secretly recorded" a chat on Marriott's website (or helped a third party do so), allegedly in violation of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 631. But Plaintiff concedes that *she* targeted Marriott by visiting its website—which is available to anyone anywhere in the nation—and initiating the chat at issue. When she did so, she reached out of California, connected to servers out of state, and briefly chatted with a Marriott employee located in Texas who informed her that she reached the wrong company and terminated the chat.

Marriott isn't the only company Plaintiff has targeted by initiating chats for the purpose of bringing lawsuits. She proclaims herself to be a "tester" who intentionally trawls the internet from wherever she is located to use chat bots for the purpose of bringing copy-paste lawsuits. *See* First Am. Compl. ("FAC"), ECF 20 ¶ 1. Her counsel has brought *more than eighty* such lawsuits targeting other companies, with Ms. Heiting as the plaintiff *in nearly forty of them*.

In light of these facts, Plaintiff cannot meet her burden to establish that Marriott is subject to personal jurisdiction in California, and the Court should thus grant Marriott's motion to dismiss. None of the necessary elements for personal jurisdiction are met. "The Court does not have general jurisdiction over Marriott." *Kevin Barry Fine Art v. Ken Gangbar*, 486 F. Supp. 3d 1353, 1360 (N.D. Cal. 2020) (Gilliam, J.). Plaintiff stipulated as much until she inexplicably backtracked.  ECF No. 11 at ¶ 2. She has thus waived general jurisdiction, which could never be established in any event.

The Court does not have specific jurisdiction either. Plaintiff cannot show that Marriott purposefully directed activities by expressly aiming at Plaintiff and California for several independent reasons. Plaintiff's "unilateral" act of connecting to servers out-of-state by initiating a chat and chatting with a representative located

in Texas cannot show that *Marriott* expressly aimed at California under well-established Supreme Court and Ninth Circuit authority. Nor could Plaintiff's chat on a universally accessible website that anyone can access anywhere in the nation show express aiming at California, much less at Plaintiff in California. This District recently so held in nearly identical circumstances *involving a CIPA claim against Marriott*, and it should do so again here. *Moledina v. Marriott*, 635 F. Supp. 3d 941, 950 (C.D. Cal. 2022) ("Plaintiff's unilateral decision to reach out of California to contact Defendant located elsewhere" is insufficient to give rise to jurisdiction.).

And that was before *Briskin v. Shopify, Inc.*, 87 F.4th at 416 (9th Cir. 2023), which makes the result even more clear here. The Ninth Circuit held in *Shopify* that an out-of-state web-based payment platform "did not expressly aim its conduct toward California" and thus wasn't subject to personal jurisdiction "simply because [Plaintiff] resided there, made his online purchase 'while located in California,' and sustained his privacy-based injuries in that state." *Id.* at 416. There is even less to support personal jurisdiction here, including because Plaintiff did not make a purchase when she initiated a chat on Marriott's website.

Plaintiff likewise cannot show the other necessary elements of specific jurisdiction: This dispute does not arise out of or relate to Marriott's suit-related California contacts because there aren't any. And subjecting Marriott to personal jurisdiction in California based solely on *Plaintiff's* chat with a Marriott associate in *Texas* would not comport with fair play and substantial justice. The case should be dismissed for this reason alone.

The Complaint also fails to state a claim. This District so held when it dismissed the same core allegations *from the same Plaintiff. Heiting v. Taro Pharms.*, 2023 WL 9319049, at *4-6 (C.D. Cal. 2023) (Garnett, J.) (dismissing Plaintiff's CIPA claim on four different grounds).

In sum, the Court should dismiss the case because it lacks personal jurisdiction or, in the alternative, because the Complaint fails to state a claim. And it should dismiss without leave to amend. Plaintiff has already amended the Complaint and has gotten nowhere. And jurisdictional evidence filed with this motion shows that further amendment would be futile. Marriott's motion should be granted.

## II.    BACKGROUND

### A. Plaintiff Initiated a Chat on a Universally Available Website that Anyone Can Access Nationwide.

Plaintiff alleges that at some undefined time, she opened her browser, went to Marriott's website, and began a conversation using Marriott's chat bot. FAC ¶ 12. She could have been anywhere when she did so because Marriott's website and the chat feature on it are available nationwide to people "from across the country," as the Complaint concedes, and the jurisdictional evidence filed with this motion confirms. *Id.*; *see also* Declaration of Amaan Ghazaly ("Ghazaly Decl.") ¶ 4. Neither the website nor the chat bot on it are "dedicated to California." *Id.* ¶ 5. They place "no greater emphasis on visitors from California" than "visitors from anywhere else in the United States or the world generally." *Id.*

"Only a visitor to Marriott's website can initiate a conversation on Marriott's chat bot" by taking steps to start a chat, which does "not automatically begin." *Id.* ¶ 6. Instead, Marriott can only respond after a customer first navigates to Marriott's website, clicks on the "Help" page, and then clicks on the question mark icon to open the chat interface. *Id.* ¶ 7.

The servers that host Marriott's website and chat bot are not in California. *Id.* ¶¶ 8-9. They are located elsewhere. *Id.* The chat bot server, for example, is located in the District of Columbia. *Id.* ¶ 9. So when a visitor initiates a chat, they are connected to servers located outside of California. *Id.* ¶ 9. And if the visitor reaches a Marriott customer service representative during a chat, they chat "by each sending

data to the chat bot servers in the District of Columbia." *Id.* That is where chat transcripts are stored, as well. *Id.* ¶ 10.

Marriott's records reflect that Plaintiff initiated a chat in April 2023. *Id.* ¶ 11. Like all visitors, Plaintiff couldn't start a chat without navigating to Marriott's website, clicking "the question mark button to initiate a chat," and then pressing the button to start a "Web Chat." *Id.* ¶ 12. Again, like all visitors, she then connected to servers outside of California in the District of Columbia. *Id.* ¶ 12.

Despite not being a Marriott Bonvoy Rewards member, Plaintiff's pretense for the chat was to find out more about the Chase Bonvoy rewards card. *Id.* ¶ 13. Plaintiff was then connected to a Marriott customer service associate located in Texas. *Id.* ¶ 14. Plaintiff stated she was "just inquiring about promo deals in getting a marriot [sic] credit card." The representative asked if she was "looking at the Chase or Amex?" *Id.* When Plaintiff responded "chase," the representative told Plaintiff that she'd have to speak with Chase to get "more information regarding what they offer" and gave her a phone number. *Id.* And after telling Plaintiff that she was speaking to the wrong company, the representative terminated the chat. *Id.* Plaintiff never mentioned her location or her address. *Id.*

Marriott's privacy policy was on its website the entire time. *See* Ghazaly Decl., Ex. B. Plaintiff acknowledges that she reviewed it. *See* Compl., ECF No. 1-1 ¶ 11. The policy unambiguously discloses that Marriott "collect[s] Personal Data when you . . . communicate with us . . . via online chat services" and that "[t]hese communications may be recorded for purposes of quality assurance and training." Ghazaly Decl., Ex. B at 9. Plaintiff decided to initiate a chat anyway.

**B. Plaintiff Has Targeted Dozens with Nearly Identical Lawsuits.**

Marriott is not the only company Plaintiff has targeted by initiating a chat for the purpose of starting a lawsuit. In fact, her counsel has brought *more than 80 such* lawsuits targeting other companies. *See Heiting v. Taro Pharms.*, Civ. A. No. 2:23-

cv-08002, ECF 20-1 (appendix of cases). Ms. Heiting was the plaintiff *in nearly 40 of them*. By the time she brought this lawsuit, she had already filed at least 18 nearly identical suits against other companies. *See Heiting v. The Container Store*, Civ. A. No. 2:23-cv-08073-DMG, ECF No. 10 (gathering cases). And she had already filed at least one substantially similar case *before she even accessed Marriott's website in April 2023 to look for a chatbot, initiate a chat, and then claim her privacy was somehow violated. See Heiting v. RingCentral*, Civ. A. No. 2:23-cv-02649, ECF No. 1-1 (state court complaint filed March 8, 2023).

Plaintiff's scores of chatbot lawsuits all follow the same formula. Plaintiff goes to a company's website, looks for a chatbot to initiate a chat with, and then files a lawsuit claiming the chat was "unexpectedly" recorded. *See, e.g., Heiting v. The Children's Place*, No. CIVSB2317853 (San Bernardino Sup. Ct. August 3, 2023). She includes allegations about website code to give her claims a false appearance of rigor ***even though her own counsel's website includes the same innocuous code***. *See* Terepka Decl. ¶ 5. Plaintiff then recycles allegations so nondescript that she can simply copy-paste them to mass produce complaints. That's what she did here twice. ECF No. 13 at 2 (establishing that original complaint was nearly identical to complaint in the *Taro* matter). Her Amended Complaint, for example, erroneously refers to Marriott as "Athena Health," another defendant in one of Plaintiff's suits that she likely copy-pasted for this one. *See* ECF No. 20 at ¶ 14.

As this District recently observed in another case involving cookie-cutter chat bot claims from another firm, "whatever one's views on the propriety of copying and pasting from boilerplate pleadings, there is a point at which all reasonable people should agree the practice has gone too far." *Licea v. Caraway Home*, 655 F. Supp. 3d 954, 964 (C.D. Cal. 2023) (Bernal, J.). Plaintiff and her counsel's more than 80 lawsuits likewise "reached that point, and then blew past it." *Id.*[2]

---

[2] Plaintiff's counsel has nonetheless ironically accused others of "clogging up our courts." *Kuhmstedt v. Enttech Media*, 2022 WL 1769126, at *6 (C.D. Cal. 2022).

## III.   LEGAL STANDARD

### A.   Lack of Personal Jurisdiction.

A party may to move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. (12)(b)(2). "Although the defendant is the moving party . . . the plaintiff bears the burden of establishing that [personal] jurisdiction exists." *Yeager v. Airbus Grp.*, 2021 WL 750836, at *2 (C.D. Cal. 2021) (Staton, J.). And when a motion is based on *evidence*, a plaintiff must prove jurisdiction "based on affirmative proof" of "specific facts." *See, e.g.*, *Excel Plas v. Sigmax Co.*, 2007 WL 2853932, at *2 (S.D. Cal. 2007). The court "may not assume the truth of allegations that are contradicted by affidavit" and "does not assume the truth of conclusory allegations." *Clarke v. Air & Liquid Sys.*, 2020 WL 12968241, at *2 (C.D. Cal. 2020).

### B.   Failure to State a Claim.

"To survive a motion to dismiss [on 12(b)(6) grounds], a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## IV.   ARGUMENT

The Court should dismiss the case because it lacks personal jurisdiction. Otherwise, the Court should dismiss the Complaint because it fails to state a claim, as this District already held in one of Plaintiff's cases against another defendant with nearly identical allegations.

### A.   The Court Lacks Personal Jurisdiction.

Plaintiff cannot establish personal jurisdiction over Marriott in California. The case should be dismissed for this reason alone.

"Two authorities govern a federal court's exercise of personal jurisdiction over a defendant: the Fourteenth Amendment's Due Process Clause and the long arm statute of the state in which the district court sits." *Briskin v. Shopify, Inc.*, 87 F.4th 404, 411 (9th Cir. 2023). "These requirements are coterminous in our case because California's long arm statute allows courts to exercise jurisdiction on any ground not inconsistent with due process." *Id*. Due process requires "'minimum contacts' with the forum state such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Yeager*, 2021 WL 750836, at *2.

Personal jurisdiction may be either "general" or "specific." *Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014). Where, as here, Defendant challenges personal jurisdiction with evidence, Plaintiff cannot "simply rest on the bare allegations of [her] complaint." *CollegeSource v. AcademyOne*, 653 F.3d 1066, 1073 (9th Cir. 2011). Plaintiff instead must come forward with facts to meet the burden to establish personal jurisdiction. *Afifeh v. Ahmadabadi*, 2022 WL 1060638, at *1 (C.D. Cal. 2022) (Blumenfeld, J.); *MGA Ent. v. Cabo Concepts*, 2021 WL 4733784, at *3 (C.D. Cal. 2021) (Olguin, J.).

Here, the Complaint fails to allege a basis for personal jurisdiction, and the evidence shows Plaintiff cannot meet her burden either. The case should thus be dismissed without leave to amend.

### 1. Marriott Is Not Subject to General Jurisdiction in California.

Marriott is not subject to general jurisdiction in California. A corporation is considered at home in its principal place of business and state of incorporation. *Daimler*, 571 U.S. at 137. For general jurisdiction to exist elsewhere, the corporation's activities in a state must be "so 'continuous and systematic' as to render [it] essentially at home." *Id.* at 127. "Only in an exceptional case will general jurisdiction be available anywhere" other than a corporation's place of incorporation

or principal place of business. *Ranza v. Nike*, 793 F.3d 1059, 1069 (9th Cir. 2015) (quotation omitted).

The Court therefore "does not have general jurisdiction over Marriott," as a California federal court recently held. *Kevin Barry Fine Art v. Ken Gangbar Studio*, 486 F. Supp. 3d 1353, 1360 (N.D. Cal. 2020) (Gilliam, J.). Plaintiff conceded this point by stipulating "that she is not asserting that this Court has general jurisdiction." ECF No. 11 at ¶ 2. Plaintiff has thus forfeited any argument otherwise, despite her counsel's later (and inexplicable) attempt to backtrack. *Caceres v. Bank of Am.,* 2013 WL 7098635, at *5 n.4 (C.D. Cal. 2013) (considering "joint stipulations between the parties" to be "judicial admissions") (Staton, J.).

Plaintiff has failed to plead and could never prove general jurisdiction in any event. Marriott is incorporated in Delaware and its principal place of business is in Maryland. Tamburello Decl. ¶ 4. This is not the exceptional case where Marriott's contacts with California are "so continuous and systematic as to render [it] essentially at home" here. *Daimler*, 571 U.S. at 127. Only about 6.4% of the properties in Marriott's portfolio are even located in California, and Marriott International, Inc. does not own any of them. *Id.* ¶¶ 8, 10. General jurisdiction thus does not exist. *Kevin Barry Fine Art*, 486 F. Supp. 3d at 1360; *Moledina*, 635 F. Supp. 3d at 948 n.1; *see also Lescano v. Marriott*, 2017 WL 10299576, at *3 (M.D. Fla. 2017) (no general jurisdiction over Marriott in Florida); *Dillon v. Avis Budget Grp.*, 2018 WL 3475529, at *4 (C.D. Cal. 2018) (defendant that "operates so many physical rental locations" not subject to general jurisdiction in California).

### 2. Marriott Is Not Subject to Specific Jurisdiction in California.

Plaintiff has not and cannot establish specific jurisdiction, which requires her to prove that: (1) Marriott purposefully directed activities at the forum; (2) her claim is one which arises out of or relates to Marriott's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice (*i.e.*, it is

reasonable). *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Plaintiff has not established, and cannot establish, any of these elements here.

### a. Marriott Did Not Purposefully Direct Activities at Plaintiff or California.

Plaintiff cannot establish personal jurisdiction for the independent reason that Marriott did not purposefully direct any conduct at Plaintiff in California.

"For claims that sound in tort," like this one, courts "most often employ a purposeful direction analysis," instead of a purposeful availment analysis. *Shopify, Inc.*, 87 F.4th at 412. Under the purposeful direction test, specific jurisdiction does not exist unless the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (quotation omitted). Plaintiff cannot establish that Marriott expressly aimed any conduct at her or California: Her allegations are based entirely on a chat *Plaintiff* initiated on a website and chat system available anywhere nationwide to connect to an out-of-state server and speak with a Marriott associate in Texas. If anything, Plaintiff expressly aimed at Marriott out-of-state. Specific jurisdiction over Marriott in California does not exist for this reason alone.

### (i) Marriott Did Not Expressly Aim at Plaintiff or California Because Plaintiff Unilaterally Contacted Marriott.

Plaintiff cannot establish that Marriott expressly aimed at her in California because her unilateral activity—initiating a chat conversation out of California to reach a Marriott representative in Texas—is the basis for this lawsuit. Plaintiff's allegations thus confirm that she cannot establish that Marriott expressly aimed at her in California.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068

(9th Cir. 2017) (quotation omitted). In *Walden v. Fiore*, for instance, the Supreme Court held that it was not enough that plaintiff reached out of the forum state (Nevada) and "contacted" defendant in another state (Georgia) because that is "precisely the sort of 'unilateral activity'" that "cannot satisfy the requirement of contact with the forum State." 571 U.S. at 290 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The "mere fact" the defendant's allegedly tortious conduct "affected plaintiffs with connections to the forum State," the Court explained, "does not suffice to authorize jurisdiction." *Id.* As a general rule, where a plaintiff's "injury is entirely personal and would follow him wherever he might choose to live or travel," the effects of a defendant's actions are "not connected to the forum State in a way that makes those effects a proper basis for jurisdiction." *Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015).

Applying *Walden*, the Ninth Circuit recently held that **a plaintiff's decision to visit a website is "the unilateral activity of consumers" that does not subject a defendant to specific jurisdiction** in California. *Shopify*, 87 F.4th at 423. There, a California plaintiff went on a third-party's website and *actually completed a transaction* to purchase fitness apparel using defendant Shopify's web-based payment processing platform. *Shopify*, 87 F.4th at 409. He likewise alleged violations of California privacy laws, claiming that Shopify "extract[ed] and retain[ed]" his "consumer data." *Id.* at 409. In affirming the dismissal for lack of personal jurisdiction, the court held that the plaintiff's "California connection" does not "matter to the analysis of whether [the defendant] expressly aimed its activities toward California." *Id.* at 415. A defendant does not "expressly aim its conduct toward California," the court explained, "simply because [a plaintiff] resided there" or "sustained his privacy-based injuries in California." *Id.* at 416.

This District and federal courts throughout California have likewise held that a plaintiff's unilateral website use *cannot even plead* personal jurisdiction, including in cases involving alleged privacy violations and website chats, like here. *Licea*, 655 F. Supp. 3d at 960 (same allegations that chat feature on website violated CIPA failed to plead specific jurisdiction in California); *see also Kauffman v. Home Depot*, 2024 WL 221434, at *2 (S.D. Cal. 2024) (allegations that defendant "surreptitiously recorded" actions "on its website" failed to plead specific jurisdiction in California even where plaintiff purchased product on website); *Doe v. FullStory*, 2024 WL 188101 (N.D. Cal. Jan. 17, 2024) (allegations that defendant's tracking technology intercepted highly sensitive data on website failed to plead specific jurisdiction in California).

This District likewise so held *in another case alleging the same privacy claim against Marriott—the Defendant here. Moledina v. Marriott*, 635 F. Supp. 3d 941 (C.D. Cal. 2022) (Garnett, J.) ("Plaintiff's unilateral decision to reach out of California" to contact Marriott "cannot" establish specific jurisdiction). And this District held that specific jurisdiction does not exist in a case where plaintiff alleged far more substantial contacts, where out-of-state defendants secretly recorded "81 telephonic communications," including "calls from Plaintiff to Defendants *and vice-versa*." *Dangoor v. Peterson's*, 2019 WL 6357252, at *3 (C.D. Cal. 2019) (Wilson, J.) (emphasis added). The fact that the plaintiff "happened to be located in California" even "when Defendants *called him* is insufficient to establish specific jurisdiction." *Id.; see also Chan v. UBS*, 2019 WL 6825747, at *8 (C.D. Cal. 2019) (Kronstadt, J.) (similar). This Court has likewise observed that as to "California-directed communications, mere 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity'" sufficient for specific jurisdiction. *Liggett v. Utah Higher Educ.*, 2020 WL 1972286, at *5 (C.D. Cal. 2020) (Staton, J.).

In light of these "[w]ell-established principles of personal jurisdiction," *Walden*, 571 U.S. at 291, both the Complaint's allegations and the evidence independently confirm that specific jurisdiction does not exist.

First, the allegations are insufficient. The sole basis for Plaintiff's claims is the vague allegation that she "utilized the chat box feature" on Marriott's site at some unspecified time. FAC ¶ 13. She does not even allege that she was in California when she used the chat feature. *Id.* This District has held that precisely such allegations—that the plaintiff "communicated with Defendant via the chat feature on Defendant's Website"—fail to plead specific jurisdiction. *Licea*, 655 F. Supp. 3d 960, 967-70. Just as in *Licea*, therefore, "Plaintiff's barebones pleading lacks even the most basic showing" to support the elements of "purposeful direction." *Id.* at 978. That is even more true after the Ninth Circuit's subsequent decision in *Shopify*. There, as here, the alleged injury from "utiliz[ing] the chat box feature," FAC ¶ 12, is "entirely personal to [Plaintiff] and would follow [her] wherever [she] might choose to live or travel." *Shopify*, 87 F.4th at 416. Plaintiff's other vague jurisdictional allegations that Marriott "does a substantial amount of business in California," FAC ¶ 12, are similarly insufficient. *See, e.g.*, *Licea*, 655 F. Supp. 3d at 967 (allegations that defendant "does business with California residents'" not enough).

Second, the evidence likewise confirms that Marriott cannot be subject to personal jurisdiction. As discussed above, the evidence shows that Plaintiff unilaterally contacted Marriott, not the other way around. Marriott did not (and could not) initiate a chat with Plaintiff. *See* Ghazaly Decl. ¶¶ 6, 12. Plaintiff started the chat, and took several steps to do so: She navigated to Marriott's website, found the chat bot, and pressed the button to start a "Web Chat." *See id.* ¶¶ 7, 12. She then reached out of California and connected to out-of-state servers to briefly chat with a Marriott representative in Texas, who informed Plaintiff that she had reached the wrong business for her inquiry and then terminated the chat. *See id.* ¶¶ 12-14.

In light of these facts and the extensive authorities above, personal jurisdiction over Marriott in California does not exist. "Plaintiff's unilateral decision to reach out of California" to a Marriott representative "located in Texas" cannot establish personal jurisdiction. *Moledina*, 635 F. Supp. 3d at 950. This District likewise recently held that "[Defendant's] actions in [Texas] did not create sufficient contacts with [California]," even if it "allegedly directed [its] conduct at [Plaintiff] whom [it] knew had [California] connections" (which Plaintiff has not even alleged here). *Bozant v. THFC Corp.*, 2020 WL 7485352, at *4 (C.D. Cal. Aug. 26, 2020) (Fischer, J.) (quoting *Walden*, 571 U.S. at 289) (alterations original).

In sum, "the unilateral activity of consumers" like Plaintiff on a "web-based platform" like a chat feature cannot subject Marriott to specific jurisdiction in California. *Shopify*, 87 F.4th at 423. The Complaint should be dismissed for lack of personal jurisdiction without leave to amend for this reason alone.

### (ii) Marriott Did Not Expressly Aim at or Target Plaintiff or California with a Universally Accessible Website.

Plaintiff also cannot establish that Marriott expressly aimed at her in California because she cannot show that Marriott individually targeted her here. The Court lacks specific jurisdiction for this independent reason, as well.

The Ninth Circuit "has long recognized" that "web-based platforms" do not target everyone where "they are accessible, which would lead to 'the eventual demise of all restrictions' on personal jurisdiction." *Shopify,* 97 F.4th at 421. A plaintiff thus "falls short of establishing that Defendant specifically targeted the forum of California" when the claims are based on "activities" generally directed "at a wide range of recipients." *Meehan v. Tsichlis*, 2021 WL 467214, at *3 (C.D. Cal. 2021) (Fitzgerald, J.). In other words, the "[o]peration of an interactive website does not, by itself, establish express aiming." *Solo Brands v. The P'ships &*

*Unincorporated Ass'ns*, 2023 WL 9420525, at *1 (C.D. Cal. 2023) (Staton, J.) (quoting *Shopify*, 97 F.4th at 417). "Instead, 'something more' is needed." *Id.*

In a case like this one, where "the website itself is the only jurisdictional contact, [the Court's] analysis turns on whether the site had a forum-specific focus or the defendant exhibited an intent to cultivate an audience in the forum." *Shopify*, 87 F.4th at 417–18. To support a finding of personal jurisdiction, there must be: "some focused dedication to the forum state which permits the conclusion that the defendant's suit-related conduct 'create[s] a substantial connection' . . . beyond the baseline connection that the defendant's internet presence already creates with every jurisdiction through its universally accessible platform." *Shopify*, 87 F.4th at 419–20 (quoting *Walden*, 571 U.S. at 284).

These authorities confirm that Plaintiff could never establish that Marriott targeted California, much less additional suit-related Marriott contacts that would be required to establish express aiming at Plaintiff there. The Complaint is entirely devoid of allegations that the chat feature on Marriott's website "prioritizes California" over "other locations" or has "some focused dedication" to California. *Id.* On the contrary, Plaintiff concedes, as she must, the lack of targeting by noting that "[c]ustomers *from across the country*, including California residents, access and use Marriott's website." FAC ¶ 12. Given that concession, the Court should give no weight to Plaintiff's conclusory allegation that Marriott's activities are somehow "directed at and harming California residents." *Id.* ¶ 6.

The evidence likewise confirms that the chat feature on Marriott's website is a "broadly accessible web-based platform" that did not target Plaintiff or California. *Shopify*, 87 F.4th at 423. Marriott's website and chat feature are available to anyone nationwide. Ghazaly Decl. ¶¶ 3-5. Marriott's platform thus "does not prioritize California, is not dedicated to California, and does not have a California-specific focus," just like in *Shopify*. *Id.* ¶ 5; *Shopify*, 87 F.4th at 422-23.

This case therefore involves the very opposite of individual targeting or express aiming. There can be no express aiming here because there is no connection "beyond the baseline connection that the defendant's internet presence already creates with every jurisdiction through its universally accessible platform." *Shopify*, 87 F.4th at 420; *see also MGA Ent.*, 2021 WL 4733784, at \*5. Marriott did not even "tailor" Plaintiff's experience with its chat system based on her alleged location in California, like the website at issue in *AMA Multimedia v. Wanat*, 970 F.3d 1201, 1211 (9th Cir. 2020). Such tailoring wouldn't be enough for specific jurisdiction in any event, because if that "constituted express aiming," the universal website would "expressly aim at any forum" from which someone visited it. *Id.* Just as in *AMA Multimedia*, so holding "would run afoul of the Supreme Court's directive in *Walden*" by "impermissibly" allowing "a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* (quoting *Walden*, 571 U.S. at 289).

Nor would it be enough to allege that Marriott "knew [s]he was in California at the time of the data recording" (which Plaintiff hasn't done anyway). *Kauffman*, 2024 WL 221434, at \*2. A defendant does "not expressly aim its conduct toward California" "'simply because [it] allegedly directed [its] conduct at plaintiffs whom [it] knew had [California] connections'" to "collect[]" data "from them" with "tracking tools." *Shopify*, 87 F.4th at 417. That is so because the "requisite 'forum-specific' focus for a 'broadly accessible web platform'" like the chat bot on Marriott's website "cannot be established" even with "allegations that [defendant] knew it was processing the data of California-based consumers for a California-based merchant." *Doe v. FullStory*, 2024 WL 188101, at \*11 (N.D. Cal. 2024). Plaintiff has less here.

In sum, specific jurisdiction does not exist for the independent reason that Marriott did not expressly aim its "universally accessible" chat "platform" at

Plaintiff or California. *Shopify*, 87 F.4th at 420. The Complaint should be dismissed for lack of personal jurisdiction without leave to amend for this reason, too.

### (iii) Marriott Did Not Expressly Aim Any Wrongful Conduct at Plaintiff or California.

Plaintiff also cannot establish express aiming because she cannot show that Marriott targeted her or California with any wrongful conduct. This is a third, independent reason that there is no personal jurisdiction.

In a tort case, express aiming cannot be established if the only relevant contact with the forum is not "abusive, tortious or otherwise wrongful." *Rex Real Est. Exch. v. Rex Real Est. I, L.P.*, 2018 WL 8335386, at *6 (C.D. Cal. 2018) (Wu, J.). This District has thus held that specific jurisdiction does not exist based on a "cease and desist letter" sent to a plaintiff in the forum. *Id.* Such letters are "normal," and are not a "contact that would, if considered alone, justify the exercise of personal jurisdiction." *Id.*; *see also PHD Mktg. v. Vital Pharms.*, 2020 WL 13336773, at *5 (C.D. Cal. 2020) (Lew, J.) (similar).

Plaintiff has even less here because Marriott didn't send her anything. Plaintiff's sole claim is that Marriott violated Cal. Pen. Code § 631(a) because it or third-party Salesforce "secretly recorded" her chat. That is not true. Salesforce merely provides "software for the chat bot on Marriott's website, similar to licensing other common business software, like Microsoft Outlook or Teams." Ghazaly Decl. ¶ 4. Those cloud services "include storing transcripts of chat bot interactions for Marriott." *Id.* Marriott thus "use[d] a third-party vendor" to "aid" its own business, which makes Salesforce "the third-party an 'extension of Defendant's website, not a 'third-party eavesdropper.'" *Byars v. Hot Topic, Inc.*, 2023.WL 2026994 (C.D. Cal. 2023). That is not "wrongful conduct," much less wrongful conduct aimed at California, so it can't "justify the exercise of personal jurisdiction." *Rex Real Est. Exch.*, 2018 WL 8335386, at *6.

### b. Plaintiff's Claims Do Not Arise Out of or Relate to Marriott's Forum-Related Activities.

Plaintiff also cannot establish that this case "arises out of or relates to the defendant's forum-related activities," independently precluding specific jurisdiction. *Schwarzenegger*, 374 F.3d at 802.

For a suit to "arise out of or relate to the defendant's contacts with the forum[,]" there must be "a connection between the forum and the specific claims at issue." *MGA Ent.*, 2021 WL 4733784, at *2. "[A] defendant's general connections with the forum are not enough." *Id.* In other words, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

For example, the Ninth Circuit held in *Shopify* that the defendant's numerous suit-unconnected activities in California—"contracts with California merchants, its Los Angeles 'store' that promotes merchant relations, its California fulfillment center, the Shopify partnership with Stripe (a California company), and Shopify USA's presence in the state (business registration, employees, etc.)"—were irrelevant to personal jurisdiction. *Shopify*, 87 F.4th at 413. Because plaintiff's injuries were "based on Shopify's extraction and processing of his personal information," his claims had "nothing to do with Shopify's brick-and-mortar operations in the state." *Id.* at 414. These contacts with California therefore were irrelevant "to the specific jurisdiction analysis." *Id.*

Plaintiff's allegations that have nothing to do with her claims are likewise irrelevant to jurisdiction. She generally alleges that "customers from across the country . . . stay at Marriott hotels in this district," for example. FAC ¶ 12. Even assuming this were true, it has nothing to do with her alleged use of the chat bot. And "to the extent" Plaintiff "suggests that" Marriott's "broader business actions in California set the wheels in motion for" it to allegedly "inflict privacy-related harm

on [her] in California, such a butterfly effect theory of specific jurisdiction would be far too expansive to satisfy due process." *Shopify*, 87 F.4th at 415.

### c. Specific Jurisdiction Over Marriott in California Would Not Comport with Fair Play and Substantial Justice.

Finally, "the exercise of jurisdiction" over Marriott in California would not comport "with fair play and substantial justice." *Schwarzenegger*, 374 F.3d at 802. This too precludes personal jurisdiction.

Marriott could not reasonably anticipate being sued in California simply because Plaintiff inquired about a Chase Bank credit card using the chat bot on Marriott's universally accessible website. Ninth Circuit "law has long recognized that as a matter of due process, web-based platforms cannot be subject to specific jurisdiction in any forum from which they are accessible." *Shopify*, 87 F.4th at 421. "Were it otherwise, 'every time a seller offered a product for sale through an interactive website, the seller would be subjecting itself to specific jurisdiction in every forum in which the website was visible . . . .' 'That result,' we have said, 'would be too broad to comport with due process.'" *Id.* at 417 (quoting *Herbal Brands*, 72 F.4th at 1091); *see also Kellytoy Worldwide v. Jay at Play Int'l Hong Kong*, 2019 WL 8064196, at *6 (C.D. Cal. 2019) (Birotte, J.) ("Doing business throughout the nation—like Walmart—does not establish general or specific personal jurisdiction in each state.").

In light of the foregoing, Plaintiff cannot establish any of the necessary elements of specific jurisdiction. Plaintiff's Complaint should be dismissed without leave to amend for this reason alone.[3]

---

[3] There is no basis for jurisdictional discovery, which should be denied if Plaintiff requests it. *See, e.g.*, *Kellytoy Worldwide*, 2019 WL 8064196, at *7.

## B. Plaintiff Fails to State a Claim for Relief under the CIPA.[4]

Even if there were personal jurisdiction, the Court should dismiss the Complaint for failure to state a claim. The Complaint alleges a claim under CIPA, Cal. Penal Code § 631(a). This section has "three distinct" clauses. *Taro*, 2023 WL 9319049, at *2-4. Plaintiff has failed to state a claim under any of them, so the Complaint should be dismissed.

The first clause of section 631(a) applies when a person "intentionally taps or makes an unauthorized connection . . . with any . . . wire, line, cable, or instrument *of any internal telephonic communication system*." Cal. Penal Code § 631(a). "Courts have consistently interpreted this clause as applying only to communications over telephones and not through the internet." *Licea v. Cinmar*, 659 F. Supp. 3d 1096, 1104 (C.D. Cal. 2023). "[B]ecause Plaintiff alleges interception of a chat communication on Defendant's website, instead of over the phone, Plaintiff cannot state a claim." *Taro*, 2023 WL 9319049, at *2 (collecting cases).

The second clause applies when a person "willfully and without consent of all parties to the communication, or in any unauthorized manner reads or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit." Cal. Penal Code § 631(a). "[T]here is generally a 'party exception' to all the clauses of Section 631." *Taro*, 2023 WL 9319049, at *3. So "as the website owner, [defendant] was the intended recipient of plaintiff's communication" and therefore cannot have eavesdropped on its own conversation. *Williams v. What If Holdings*, 2022 WL 17869275, at *2 (N.D. Cal. 2022). Here, "to the extent Plaintiff seeks to hold Defendant directly liable under the second clause for eavesdropping on the chat conversation, the party exception should apply." *Taro*, 2023 WL 9319049, at *3. That is so because "Plaintiff alleges that she used the chat

---

[4] Marriott relies on the evidence submitted with this motion solely for purposes of challenging personal jurisdiction, which is permitted under Rule 12(b)(2). *See, e.g.*, *Sigmax*, 2007 WL 2853932, at *4-8.

feature on Defendant's website believing that she was chatting with Defendant." *Id.*; *see also* FAC ¶ 13 (alleging that "consumers believe" their chats "are being sent directly to Marriott").

The third clause applies when a person "uses, or attempts to use" any "information" obtained in violation of the first two clauses. Cal. Penal Code § 631(a). So if there isn't a violation of one of the first two clauses, there can't be a violation of clause three. That is the case here. *See Taro*, 2023 WL 9319049, at *3 (explaining that "Defendant is shielded from direct liability under the third clause by the party exception to Section 631(a)" that precludes liability under the first two clauses).

Finally, the aiding and abetting provision of the CIPA applies when one "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above." Cal. Penal Code § 631(a). Plaintiff fails to state a claim under this theory for several independent reasons.

For one, Plaintiff fails to plausibly allege that Marriott aided a third party (Salesforce) in reading a "communication *while the same is in transit.*" There is no allegation that Salesforce ever intercepted any of Plaintiff's chat messages while they were "in transit," so Defendant cannot be liable for any kind of aiding and abetting. *See generally* FAC. Plaintiff seeks to cure the infirmity in its original Complaint by claiming that "Salesforce intercepts data from chat in real time," but this conclusory assertion is incompatible with the remainder of Plaintiff's allegations. Fundamentally, it is *Defendant's* code that allegedly diverted Plaintiff's information to Salesforce after Defendant had already received it. FAC ¶¶ 13, 20. In other words, Plaintiff alleges that the information is "transmit[ted] from Marriott to Salesforce." FAC ¶19; *see also* FAC ¶ 20 (alleging that the transmissions are "sending the communications to the host server (Salesforce Live Agent)"). "Plaintiff

uses the nefarious-sounding terms" like "'intercepts' and 'diverts,'" but that fails to allege that any third party read a communication *while in transit*. *Gutierrez v. Converse Inc.*, 2023 WL 8939221, at *4 (C.D. Cal. 2023).

Moreover, even if the Court were to take Plaintiff's allegation that Salesforce intercepted data "in real time" at face value, this very Court has rejected this precise verbiage as a basis for plausibly pleading that a communication was intercepted "in transit." *In re Vizio*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (Staton, J.) (dismissing claim where "vague allegations about how [defendant's] data collection occurs 'in real time'" did not "provide fair notice to Defendants of when" the interception allegedly took place). "Courts in this circuit have repeatedly found such general and conclusory allegations insufficient." *Taro*, 2023 WL 9319049, at *6. Plaintiff fails to state an aiding and abetting claim for this reason alone.

Plaintiff likewise fails to plausibly allege that Marriott "aided" anyone else, including Salesforce, in "intercepting" anything. "When a third-party software provider possesses only the capability to record and store the contents of an online chat for the website owner, its technical function is akin to that of a tape recorder" to which section 631(a) does not apply. *Taro*, 2023 WL 9319049, at *4 (collecting cases). Indeed, it is not enough for a plaintiff to merely allege that "the third-party software company ran the chat function from their web servers, could view transcripts in real time, and would analyze the customer-support agent interactions in real time to create live transcripts of communications," because that doesn't support a reasonable inference that the third party does anything beyond what is needed to "furnish[]" the communications "to [Defendant]." *Id.* (discussing *Yockey v. Salesforce*, 2023 WL 5519323, at *5 (N.D. Cal. 2023)).

Nor do the other allegations about Salesforce support such an inference. Plaintiff cites various general statements about Salesforce, including from its SEC filings. *See* FAC ¶¶ 15-18, 21. But Plaintiff conspicuously fails to mention that *none*

of these quotations refer to Marriott or Salesforce's relationship with Marriott. *See id.* The quotations also aren't about Salesforce's chat bot software and instead relate to other, irrelevant services that have nothing to do with this case. *See, e.g.*, FAC ¶ 18 (quoting SEC statement regarding a product not at issue here that allows customers—not Salesforce—to visualize data). Just as in *Taro*, therefore, "Plaintiff has not adequately pled factual allegations to support [Salesforce's] capabilities to function as anything other than a tape recorder, storing data for a party to this action." *Taro*, 2023 WL 9319049, at *4.

Finally, Plaintiff has failed to adequately allege any interception of "protected contents." *Taro*, 2023 WL 9319049, at *5. That is so because the Complaint does not "allege any substantive communications by Plaintiff that she believes" were "intercepted." *Id.* So "Plaintiff has failed to" adequately allege "protected contents under section 631(a)." *Taro*, 2023 WL 9319049 at *5.

In sum, Plaintiff has failed to state a CIPA claim, which should be dismissed.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss the case because it lacks personal jurisdiction. Otherwise, it should dismiss because the Complaint fails to state a claim. And it should dismiss without leave to amend. Plaintiff has already amended. Any further amendment would be futile, especially because the evidence confirms that personal jurisdiction does not exist.

DATED:  March 22, 2024

*/s/Alexander D. Terepka*
Alexander D. Terepka
Leo O'Toole (*pro hac vice* pending)
**WATSTEIN TEREPKA LLP**
515 South Flower Street, 19th Floor
Los Angeles, CA 90071
alex@wtlaw.com
Telephone: (404) 782-9821

*Counsel for Defendant*
*Marriott International, Inc.*

# <u>CERTIFICATION OF RULE 11-6.1 COMPLIANCE</u>

The undersigned, counsel of record for Marriott International, Inc., certifies that this brief contains 6,943 words, which complies with the word limit of L.R. 11-6.1.

DATED: March 22, 2024                          WATSTEIN TEREPKA LLP

*/s/Alexander D. Terepka*
Alexander D. Terepka

*Counsel for Defendant*
*Marriott International, Inc.*

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 22nd day of March 2024, I caused a true and correct copy of the foregoing to be electronically filed with the Court using the CM/ECF system, and thereby delivered the foregoing by electronic means to all counsel of record.

*/s/ Alexander D. Terepka*
Alexander D. Terepka