JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:23-cv-10822-JLS-MAA Date: August 05, 2024
Title: Anne Heiting v. Marriott International, Inc. et al

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Charles A. Rojas | N/A |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING MOTION TO DISMISS (Doc. 22)**

Under submission is a Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant Marriott International, Inc. ("Marriott"). (Mot., Doc. 22.) Plaintiff Anne Heiting ("Heiting") opposed, and Marriott replied. (Opp., Doc. 27; Reply, Doc. 30.) Having considered the parties' papers, and for the following reasons, the Court GRANTS the Motion.

## I. BACKGROUND

Heiting is a California resident bringing this action on behalf of herself and all others similarly situated. (First Amended Compl. ("FAC"), Doc. 20, ¶¶ 1, 23.) Marriott is an international hotel chain incorporated in Delaware with its principal place of business in Maryland. (Tamburello Decl., Doc. 25, ¶¶ 4, 6.) Marriott operates the website www.marriott.com ("website") in connection with its hotel business. (FAC ¶ 2.)

On April 12, 2023, Heiting initiated a chat using the chat box feature on the website. (Ghazaly Decl., Doc. 24, ¶ 11; FAC ¶ 12.) The chat box feature uses code that

embeds content from Salesforce.[1] (FAC ¶¶ 13–14.) The code allows Salesforce to access the data from the chats, which Salesforce then uses for its own business purposes. (*Id.* ¶¶ 15–22.) Marriott also receives access to all customer data obtained by Salesforce. (*Id.* ¶ 14.) Marriott does not inform customers using the chat feature that the conversation will be monitored by Salesforce or that user information will be shared with Salesforce. (*Id.* ¶¶ 16, 18.) Marriott does not otherwise disclose its relationship with Salesforce on its website. (*Id.*)

Heiting brings this lawsuit alleging that she did not consent to sharing her user information with Salesforce and argues that this type of third-party involvement amounts to wiretapping and/or eavesdropping in violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code §§ 630, *et seq.* (*See generally* FAC.) On December 27, 2023, Marriott removed the action to this Court. (*See* Notice of Removal, Doc. 1.) On March 12, 2024, Heiting amended her complaint to convert what was originally an individual lawsuit into a putative class action. (*See* FAC.) Marriott now brings the instant Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim. (*See* Mot.)

While the Motion to Dismiss was pending, the Ninth Circuit vacated its decision in the case *Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. 2023) and decided to rehear the case en banc. *See Briskin v. Shopify, Inc.*, 101 F.4th 706 (9th Cir. 2024). Because *Briskin* was relevant to the Court's analysis here, the Court asked the parties whether this action should be stayed pending the outcome of the en banc decision. (*See* Order to Show Cause, Doc. 34.) Both parties timely responded. (Heiting Response, Doc. 35; Marriott Response, Doc. 36.) Having considered those responses, the Court agrees with Marriott that it can decide this Motion based on existing, pre-*Briskin* Ninth Circuit

[1] Salesforce is a "customer relationship management" company that allows its clients to "store, track, and manage customer information." *See* Jody Farrar, *What Does Salesforce Do?*, The 360 Blog (Feb. 28, 2024), https://www.salesforce.com/blog/what-does-salesforce-do/.

precedent. The Court now grants the Motion for lack of personal jurisdiction and, because the Court determines that it lacks jurisdiction over Marriott, it does not address the arguments for dismissal under 12(b)(6).

## II. LEGAL STANDARD

The Court evaluates this Motion to Dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure. "Although the defendant is the moving party . . . the plaintiff bears the burden of establishing that [personal] jurisdiction exists." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citation omitted). "In evaluating the appropriateness of personal jurisdiction over a nonresident defendant, [courts] ordinarily examine whether such jurisdiction satisfies the 'requirements of the applicable state long-arm statute' and 'comport[s] with federal due process.'" *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 919 (9th Cir. 2011) (quoting *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1404–5 (9th Cir. 1994)). "Because California permits the exercise of personal jurisdiction to the full extent permitted by due process, [courts] need only determine whether jurisdiction over [a defendant] comports with due process." *Id.* (cleaned up); *see* Cal. Civ. P. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). "For due process to be satisfied, a defendant, if not present in the forum, must have 'minimum contacts' with the forum state such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach*, 453 F.3d at 1155 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Applying the 'minimum contacts' analysis, a court may obtain either general or specific jurisdiction over a defendant." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). "If the defendant's activities in the forum are substantial, continuous and systematic, general jurisdiction is available; in other words, the foreign defendant is

subject to suit even on matters unrelated to his or her contacts to the forum." *Id.* "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). On the other hand, a court may exercise specific jurisdiction over a foreign defendant if the plaintiff's claims "'arise out of or relate to the defendant's contacts' with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017)). But "a strict causal relationship between the defendant's in-state activity and the litigation" is not needed for specific personal jurisdiction, and "some relationships will support jurisdiction without a causal showing." *Id.* at 362. It is enough that the suit "*relate* to the defendant's contacts with the forum." *Id.* (emphasis in original).

The Ninth Circuit has established three requirements for a district court to exercise specific personal jurisdiction over a nonresident defendant:

(1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[] himself of the privileges of conducting activities in the forum";

(2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and

(3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1111 (9th Cir. 2002)).

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985)). "[I]n the absence of an evidentiary hearing,[2] the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (quoting *Pebble Beach*, 453 F.3d at 1154). "[U]ncontroverted allegations in [plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor." *Id.* (quoting *Rio Props., Inc.*, 284 F.3d at 1019).

## III. ANALYSIS

Marriott argues that it is not subject to personal jurisdiction in this Court. Plaintiff does not contend that the exercise of general personal jurisdiction is proper; accordingly, the Court analyzes only whether exercise of specific personal jurisdiction is appropriate. For the reasons below, the Court concludes that it may not properly exercise personal jurisdiction over Marriott.

[2] The district court has discretion to hold an evidentiary hearing on a 12(b)(2) motion to resolve "issues of credibility or disputed questions of fact" raised in the pleadings and other submitted materials. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Neither party has requested an evidentiary hearing, and, although the parties have some conflicting views of their interactions, no legally significant facts are in dispute. Therefore, the Court finds no reason to conduct an evidentiary hearing.

### A. Purposeful Direction Test – Express Aiming

Here, Plaintiff brings a single tort claim. For cases sounding in tort, "[courts] employ the purposeful direction test," a three-part test known as the "'effects' test" that "derives from *Calder v. Jones*, 465 U.S. 783 (1984)." *Axiom Foods*, 874 F.3d at 1069. The effects test asks whether "the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). "The defendant must have '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Axiom Foods*, 874 F.3d at 1069 (quoting *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012)). Plaintiffs carry the burden on all three prongs.

Here, there is no real dispute that the first and third elements of the effects test are satisfied. Marriott committed the requisite intentional acts by operating its website, installing Salesforce software on said website, and otherwise collecting, sharing, or using Plaintiff's information obtained via the chat-feature. *See Will Co., Ltd. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022) (explaining that operating a website, purchasing domain name, and purchasing website services are all intentional acts). And Marriott was aware that it was using and was allowing Salesforce to use data gleaned from the customer chat feature, which could foreseeably cause harm to users in California. Marriott does not contest this. (*See generally* Mot. & Reply.) So, this case turns on prong two: whether Heiting can establish the "express aiming" element.

In determining "express aiming," the court inquires "whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). In other words, in tort actions, the Court is to focus on "the relationship among the defendant, the forum, and the litigation." *Id*. at 291 (quoting *Calder*, 465 U.S. at 788). In *Walden*, for example, a police officer who allegedly unlawfully searched

plaintiffs in an Atlanta airport and knew that they were residents of Nevada, and were going to travel back to that forum, could not be haled into court in Nevada based on his contact with plaintiffs. *See id.* at 288–89. "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id*. at 291. The *Walden* ruling clarifies that the plaintiff's connections to the forum state are not considered when assessing the appropriateness of specific jurisdiction, even when the defendant knows of the plaintiff's strong connections to the forum and harm to the plaintiff in the forum is foreseeable. *See Axiom Foods*, 874 F.3d at 1069–70; *see also Picot*, 780 F.3d at 1215 (stating that where the plaintiff's "injury is entirely personal to him and would follow him wherever he might choose to live or travel," then the "effects of [the defendant's] actions are [] not connected to the forum State in a way that makes those effects a proper basis for jurisdiction" (quotations omitted)).

Moreover, not all the defendant's contacts with the forum are necessarily relevant. In tort actions, the claim must "arise[] out of or relate[] to the defendant's forum-related activities." *Axiom Foods*, 874 F.3d at 1068. Additionally, in the context of an interactive website, operation of the website alone does not constitute express aiming—the plaintiff needs to allege "something more." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091–92 (9th Cir. 2023). "When the website itself is the *only* jurisdictional contact, [the] analysis turns on whether the site had a forum-specific focus or the defendant exhibited an intent to cultivate an audience in the forum." *Id.* at 1092.

**1. Identifying Relevant Contacts with the Forum**

The Court begins by reiterating that it is the defendant's contacts with the forum that are relevant to an express aiming analysis. *Walden*, 571 U.S. at 290. Accordingly, here, Heiting's arguments that she is a California resident and was located in California at the time the harm occurred is not sufficient. And, given that Salesforce is not a defendant in this lawsuit, Heiting's arguments regarding third-party connections to the forum are

similarly insufficient. *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1211 n.6 (9th Cir. 2020) ("*Walden* made clear that the *third-party* advertiser's behavior cannot be attributed to the defendant as a contact." (emphasis added)).

Turning then to Marriott's contact with California, it is similarly important to identify which of those contacts are relevant to the Court's personal jurisdiction analysis. Because "there must be 'an affiliation between the forum and the underlying controversy,'" not all of Marriott's conduct in California will bear on whether it is subject to personal jurisdiction in *this* action. *Bristol-Myers Squibb*, 582 U.S. at 262 (quoting *Goodyear Dunlop Tires*, 564 U.S. at 919). As a result, the Court can disregard Heiting's argument that "Marriott does a substantial amount of business in California." (FAC ¶ 6.) Marriott's broader business contacts with California are unrelated to Heiting's alleged privacy-related harm and Heiting does not show (and cannot show) any relationship between Marriot's general business in California and her cause of action. Therefore, in determining the applicability of specific jurisdiction over Marriott, the Court does not focus on these attenuated contacts and instead looks only to the contacts from which the alleged harm arose: namely, Marriott's role in operating the website as related to the covert collection, processing, and distribution of Heiting's data.

**2. Marriott's Website and Express Aiming**

The central question is whether Marriott's conduct operating the website amounts to the "something more" required for express aiming. *Herbal Brands*, 72 F.4th at 1091–92. The Ninth Circuit has identified several principles for evaluating web platforms for the purpose of specific jurisdiction. Geotargeted advertisements and the defendant's awareness of web-driven revenue in the forum state is not sufficient. *See AMA Multimedia*, 970 F.3d at 1210–11. But it is relevant to consider whether the website "appeals to … an audience in a particular state" using subject matter that focuses on that state, *see Mavrix Photo*, 647 F.3d at 1230–31, or "actively target[s] the [forum state]

market" using website design strategies such as host locations and content delivery network services that optimize use in that state, *see Will Co.*, 47 F.4th at 923–24. Finally, other elements of a website, such as legal compliance schemes that are focused on the laws of a specific state or advertising structures that prioritize hits in a specific state, can support a showing of "something more." *See id.* at 925 (legal compliance); *AMA Multimedia*, 970 F.3d at 1211 (advertising structures).

Here, Heiting has not shown that Marriott operated its website to specifically target the California market or otherwise prioritize and/or cultivate data gleaned from California users. Heiting does make conclusory statements about Marriott's forum-specific focus, arguing that "Marriott also does "*something more*" to subject itself to the Court's jurisdiction. Marriott has [] expressly aimed its chatbot surveillance scheme at California customers." (Opp. at 15.) But Heiting offers no facts to support these statements or to distinguish California from any other state, and instead resorts to inapposite metaphors. (*See* Opp. at 16 ("Marriott has effectively placed an eavesdropping device in Plaintiff's home.").)

Although the Court takes all facts presented in the light most favorable to the plaintiff, the plaintiff still bears the responsibility of presenting those facts—unsupported conclusions are not enough to survive dismissal. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Because the law is clear that a defendant cannot be sued in any forum where its website is visible, *see Herbal Brands*, 72 F.4th at 1091, and because Heiting has not shown that Marriott operated its website in a manner that specifically targeted California, the Court holds that Heiting has failed to establish that Marriott expressly aimed its actions at the forum, making the exercise of specific personal jurisdiction inappropriate.

**B. Request for Jurisdictional Discovery**

Heiting requests that if the Court determines that she has failed to meet her burden of demonstrating personal jurisdiction, it permit her jurisdictional discovery. The district court has broad discretion to permit or deny discovery on jurisdictional issues. *Butcher's Union Loc. No. 498, United Food and Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986). Such "[d]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* (quotations omitted). However, where plaintiff's argument in favor of personal jurisdiction is "both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach*, 453 F.3d at 1160 (quotations omitted).

Here, Heiting proposes discovery on topics that are either irrelevant or unnecessary to the personal jurisdiction analysis. Specifically, Heiting requests that the Court grant her leave to conduct limited discovery on the following topics: (1) any contract(s) between Marriott and Salesforce regarding the chat service, (2) the types of data collected through the chat, including Plaintiff's data, (3) information regarding what Marriott and Salesforce do with the chat data once obtained, (4) where the chat data is stored, transmitted, and received, and (5) permission to depose Marriott employees. (Opp. at 23.) None of these requests is relevant to assessing personal jurisdiction. The Court already accepts all of Heiting's claims as true, including that Marriott has contracted with Salesforce to deploy a chat feature on its website. There is nothing to be gained by reviewing the terms of the contract, particularly not as would relate to establishing personal jurisdiction. Information regarding what sort of data is collected and where it is transferred or stored similarly have nothing to do with whether Marriott's website is operated in a manner that establishes personal jurisdiction in California. Finally, Heiting has not offered any compelling explanation as to why deposing Marriott

employees would contribute to a jurisdictional analysis. For these reasons, no jurisdictional discovery is warranted here.

## IV. CONCLUSION

For the above reasons, the Court may not assert personal jurisdiction over Marriott and therefore GRANTS the Motion to Dismiss WITHOUT LEAVE TO AMEND and WITHOUT PREJUDICE to refiling in an appropriate jurisdiction. The Court further DENIES Plaintiff's request for jurisdictional discovery. Within **five** days of this Order, Marriott shall file a proposed judgment.

Initials of Deputy Clerk: cr